## Snyder's Appeal.    Hughes's Estate.

1. A separate use for a woman cannot be created unless she is covert or in contemplation of marriage. The fact that she becomes covert before the distribution of the estate does not affect the trust. Its validity is determined by the status of the woman at the time of the creation of the trust.

2. A testator gave the residue of his estate to trustees, " to pay over the net interest and income thereof annually, or oftener, if they may see fit, unto my four daughters, A., K., F. and T. H., share and share alike, for their sole and separate maintenance, education and support until my youngest child shall arrive at the full age of twenty-one years; and as soon as my said youngest daughter shall have attained her said majority, then I direct my said executors to divide all the rest, residue and remainder of my estate then in their possession, equally between my said four daughters, if then living, and to the issue of any of them who may be then deceased, such issue taking such share only between them as his, her or their parent would have had and taken if living; in such way and manner, however, that the same shall be for their sole and separate use and support, and shall not in any way be liable to, the control, debts or engagements of their then present or any future husband or husbands they, or either of them, may have." The testator made his will in 1870, and died a few weeks thereafter. The youngest daughter attained her majority in 1878. When the testator died, none of the daughters were married or in contemplation of marriage. At the time the youngest daughter arrived at her majority, one of the daughters was married and another was betrothed. *Held*, that as none of the daughters were married, nor in contemplation of marriage at the time of the testator's death, the trust for their sole and separate use fell.

3. McBride *v.* Smyth, 4 P. F. Smith 245, followed.

January 21st 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    GREEN, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1880, No. 30.

, Appeals of Charles J. Snyder and others from the decree of the court in the distribution of the balance in the hands of the executors and trustees under the will of George Hughes, deceased.

[Snyder's Appeal.]

George Hughes died January 15th 1871, leaving a will dated December 23d 1870, wherein, after certain specific bequests, the testator left the residue of his estate to trustees in trust to pay the income to his four daughters, until the youngest should arrive at the age of twenty-one years, and upon her arriving at that age, the will provided:—

"Then I direct my said executors to divide all the rest, residue and remainder of my estate, real, personal and mixed, then in their possession, equally between my said four daughters, namely, Annie, Kate, Fannie and Teresa Hughes, if then living, and to the issue of any of them who may be then deceased, such issue taking such share only between them as his, her or their parents would have had and taken, if living, in such a way and manner, however, that the same shall be for their sole and separate use and support, and shall not in any way be liable to the control, debts or engagements of their then present or any future husband or husbands they, or either of them may have."

At the time of the death of the testator, neither of his said daughters was married nor in contemplation of marriage.

The youngest daughter, Teresa, became twenty-one years of age August 26th 1878, at which time one of the said daughters, Fannie, was married to Philip R. Muller, and another, Annie, was engaged to be married to Charles R. Snyder, the former having been married November 30th 1876, and the latter, October 16th 1878. Neither Kate nor Teresa are now married nor in contemplation of marriage.

At the audit of the account of the trustees, the auditing judge, Penrose, J., held that as to Kate and Teresa, the trust fell, but as to Mrs. Muller and Mrs. Snyder, they held that as one was married and the other contemplating marriage at the time that the youngest child arrived at twenty-one years of age, the trust must be sustained as to them, and accordingly awarded their shares to be held in trust for their sole and separate use.

Exceptions were filed to this adjudication which the court dismissed, and confirmed the adjudication. The following was the opinion of the court below, Penrose, J.:—

"That a trust for separate use cannot exist, except for a woman married or contemplating marriage, is too well established to need the citation of authority. It is indeed implied in the very nature and definition of such a trust, which is purely a creation of equity for the protection of woman in a state of coverture, and therefore no more applicable to a single woman than it is to a person of the opposite sex.

"It is true that in England, if created for a woman then unmarried, such a trust is not absolutely void, but simply suspended, and becomes operative in case of her subsequent marriage, if, in the

meanwhile she has not exercised the power of alienation, as she may do.

"But in Pennsylvania the views of Lord Cottenham, in Massey *v.* Parker, 2 Myl. & K. 174, overruled subsequently in Tullett *v.* Armstrong, 1 Beavan 1; 4 Mylne & Craig 377, were adopted in Hamersly *v.* Smith, 4 Whart. 126, and it is here settled by an unbroken line of cases, that a trust for separate use, if not efficacious at the time appointed for it to go into effect, cannot become so by reason of any subsequent marriage. So that, as said in McBride *v.* Smyth, 4 P. F. Smith, 250, "nothing else but a legislative enactment can change the law as thus established."

"The case before us, however, is not affected by this principle. It is true that when the will was made, and when the testator died, his daughters were all unmarried. They were then young children, the youngest but thirteen years of age. He was aware, for knowledge in this respect must be presumed, that a trust for separate use could not, under these circumstances, be created. He does not attempt to do it. Evidently acting under professional advice, he defers the time at which his daughter's estates are to take effect, and gives his entire property to trustees, upon whom he confers certain active duties. These duties are: first, to receive and apply the income for a given period; and, second, to make conveyances when that period has expired. The character of the conveyances so to be made is simply indicated by the testator, the actual conveyance being left to the trustee, and whether the daughters shall receive legal or equitable estates depends upon their status when the conveyance is to be made.

"The time at which this is to be done is when the youngest daughter reaches the age of twenty-one years, when the trustees are directed to make division of the estate in such way and manner, as that the share of each daughter shall be for her sole and separate use and support, and shall not in any way be liable to the control, debts, or engagements of her then present or any future husband. Of course, if the daughters all remain unmarried, the direction as to the separate use will not take effect, nor can it avail so far as any future husband is concerned, but the provision is executory, and to be construed liberally.

"It is as if he had said, 'Should any of my daughters be then married or contemplating marriage, I direct that their shares shall be settled by my said trustees for their separate use, the shares of the others to be conveyed to them absolutely.' 'Executory trusts,' says Mr. Smith, 'are trusts raised by a stipulation or direction in a will, &c., to make a conveyance, settlement, &c., to uses, or upon trusts which do not appear to be formally and finally declared by the instrument containing such stipulation.' In the case of trusts executed, he adds, 'The limitations may be deemed to receive their intended shape from the words of the will, &c., itself.

[Snyder's Appeal.]

But in the case of trusts executory, the party may be fairly understood to leave the limitations to be perfected by the conveyance, settlement, &c., stipulated or directed by him, and to have intended that the conveyance, settlement, &c., should avoid or correct any relative inconsistencies or technical obstacles, arising from impropriety of expression, to the general scope of the conveyance, settlement, &c., so directed by him.' Fearne Cont. Rem. *118, Id. 113–14; Atherly on Marriage Settlements *121; 4 Kent *219.

"It will thus be seen that the case differs very essentially from McBride *v.* Smyth, 4 P. F. Smith 245, which has been cited as an authority against the position here taken. The trust there was not executory in the sense defined above. The estate given to the trustees terminated *ipso facto*, when the youngest child became of age, and no power or duty with regard to the settlement or division then to be made was conferred upon them. The testator undertook to make the division himself, and, of course, the invalidity of the trust for separate use was determined by the state of facts at the time of his death. But here the estate remains in the trustees, and until they have exercised the power given, does not pass to the daughters at all. Until then, though in one sense vested, it is as already stated, uncertain whether their interests will take effect as legal or as equitable estates. If married, the trustees will make settlements to their separate use; if unmarried, they will take absolutely.

"It cannot be doubted that a testator may give an estate *in futuro*, either in remainder or by way of executory devise, to his daughter, if she be then unmarried, but if married, to trustees for her separate use. There is nothing illegal or against the policy of the law or any rule of propriety in such an alternative limitation; and this, in effect, is precisely what has been done in the case now before us.

"The hostility to trusts which for a period characterized the decisions of our Supreme Court has passed away. They are no longer regarded with disfavor; on the contrary, within proper limits, they are encouraged, especially where intended for the protection of the beneficiary. See Earp's Appeal, 25 P. F. Smith 119; Ingersoll's Appeal, 5 Norris 245.

"The question presented in this case is one of importance, and until a higher court shall say that the division of the testator's estate to be made by the trustees at the time his youngest child becomes of age, shall *not* be in such manner as that the shares of his married daughters shall be for their sole and separate use, we must decline to permit it to be made in any other way."

Exceptions dismissed, and adjudication confirmed.

Ashman, J., filed a dissenting opinion.

From this decree Mrs. Snyder and Mrs. Muller took this appeal.

*Theodore F. Jenkins*, for appellants.—It is submitted that the learned judge has not shown any controlling distinction between the present case and that of McBride v. Smyth, 4 P. F. Smith 250. In the latter, the estate, as in this, was vested in the trustees, with active duties, until the youngest child became twenty-one years of age. The time of distribution was the same, namely, when the youngest child became twenty-one years of age. And the status of the daughters at the time fixed for distribution was the same, as she was then married. But the status of the woman at the time of distribution does not fix the validity of a separate use.

The law of Pennsylvania is that the validity of a separate trust depends upon the status of the woman at the time of the creation of the trust, when she must be either married or in immediate contemplation of marriage, or else there is no meaning in the above language quoted from McBride v. Smyth. See also Yarnall's Appeal, 20 P. F. Smith 339; Ogden's Appeal, Id. 501; Wells v. McCall, 14 Id. 207.

The court also endeavors to support its decision on the ground that the trust was executory. It is clear that the trust cannot be sustained on this ground.

No appearance for appellees.

Mr. Justice STERRETT delivered the opinion of the court, March 1st 1880.

The testator gave the residue of his estate to his executors, in trust, to collect the rents, interest and income thereof, and after deducting taxes, expenses, &c., to pay the same annually, or oftener if they saw fit, to his four daughters, share and share alike, for their sole and separate maintenance and education, until the youngest obtained the age of twenty-one years; at which time his executors were directed to divide all his estate, then in their possession, equally between his four daughters, "in such way and manner, however, that the same shall be for their sole and separate use and support, and shall not in any way be liable to the control, debts or engagements of their then present or any future husband or husbands they or either of them may have."

The testator made his will in December 1870, and died a few days thereafter. The youngest daughter attained her majority in August 1878, prior to which time one of the four was married; another, then betrothed, was married shortly afterwards, and both husbands are living. The other two daughters remained single; and as to them no question arises. It is conceded that the will was inoperative to create any trust as to their respective shares, and consequently they are entitled to take them absolutely. But, as to the married daughters, the contention is that inasmuch as the one was actually married and the other in immediate contempla-

[Snyder's Appeal.]

tion of marriage at the time fixed by the testator for the division of his estate, the trust for their separate use took effect at that time; that their then status determined the nature of their interest.

While the English doctrine appears to be, that a trust for separate use may be effectually created, notwithstanding the woman is unmarried at the time, and no particular marriage is then in contemplation, and that the trust, although suspended by the cessation of coverture, will re-attach on a subsequent marriage, it is not so with us. In McBride v. Smyth, 4 P. F. Smith 245, Mr. Justice STRONG says, "Whatever may be the rule in the English courts, it is here too well-established to be disturbed by anything else than a legislative enactment, that a separate use for a woman cannot be created unless she is covert, or unless in immediate contemplation of her marriage." The same doctrine is re-asserted in Wells v. McCall, 14 P. F. Smith 207, where it is said, that all the cases which decide, that on the termination of coverture the trust falls and is not revived by a second marriage, prove that the marriage must be in immediate view at the time the trust is created, for if any marriage would answer to the provision for the trust, a second would as well as the first. After referring to the opposing principles underlying our doctrine of trusts, and springing, on the one hand, from the private right of the donor to control his gift; and, on the other, from that public policy which forbids restraints on alienation, it is said, that the necessary consequence of this conflict has been "a compromise which yields the doctrine of policy so far, as to enable the donor to impose a trust upon his gift when it is done in immediate contemplation of marriage." This appears to be the utmost limit to which this court has gone in favor of private right as against public policy, and it would perhaps be unwise to go any further. Trusts for coverture, either actual or in contemplation at the time of their creation, have some foundation in reason which cannot apply to coverture in the more remote future. In the former, the testator is presumed to know the then existing or contemplated alliance, and has the data on which to base an intelligent judgment as to the propriety of creating a trust. While in the latter, he can have nothing more than a bare possibility as a guide.

The case before us is almost identical in principle with McBride v. Smyth, supra. In that case, the testator gave his unmarried daughter an estate for her sole and separate use, to take effect when his youngest child should attain the age of twenty-one years; and it was held that the will was inoperative as to the trust, for the reason, that it was not created in immediate contemplation of marriage. In the present case, the testator directed his executors to divide his estate when his youngest daughter attained her majority, and enjoined on them to do it in such "way and manner," as that the respective shares of each daughter should be for her sole and separate use. There is practically no distinction between the cases,

unless we hold that the testator could confer a power on his executors, as trustees, which according to all our cases he himself did not possess. If we were to so hold, it would be difficult to foresee the results to which it would lead.

We are of opinion, that the testator's will neither created a separate use for his daughters nor empowered his executors to do so.

> The decree of the Orphans' Court is reversed, at the costs of the appellees, to be paid out of the funds of the estate in their hands, and the record is remitted for further proceedings.